OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Ohio Chamber of Commerce et al., Appellees, v. State Emergency Response Commission, Appellant.

[Cite as Ohio Chamber of Commerce v. State Emergency Response Comm. (1992),    Ohio St.3d    .]

Emergency Response Commission -- R.C. 3750.02(B)(1), construed.

The language "equivalent in scope, content, and coverage," as used in R.C. 3750.02(B)(1), prescribes only minimum regulatory requirements and does not prevent the State Emergency Response Commission from promulgating rules that impose reporting requirements on owners and operators of regulated facilities that exceed the reporting requirements of the Emergency Planning and Community Right-To-Know Act of 1986, Section 11001 et seq., Title 42, U.S. Code.

(No. 91-1507 -- Submitted May 20, 1992 -- Decided September 9, 1992.)

Appeal from the Court of Appeals for Franklin County, Nos. 91AP-173 and 91AP-174.

Effective October 17, 1986, Congress enacted the Emergency Planning and Community Right-To-Know Act of 1986, Section 11001 et seq., Title 42, U.S. Code ("EPCRA"). The EPCRA is also known as Title III of the Superfund Amendments and Reauthorization Act of 1986. It appears that the EPCRA was enacted in response to the tragic release of toxic chemicals that occurred in Bhopal, India.

The EPCRA requires that each state create a state emergency response commission and a local emergency planning committee for each planning district. Section 11001, Title 42, U.S. Code. The Act contains various reporting provisions. For instance, owners and operators who use or maintain certain hazardous chemicals are required to submit an emergency and hazardous chemical inventory reporting form to the appropriate local emergency planning committee, state emergency response commission, and local fire department. Section 11022(a)(1). There are two types of inventory forms. "Tier I" forms primarily request general information on the amount and location of hazardous chemicals by category. Section 11022(d)(1). These forms are submitted annually. Section 11022(a)(2). "Tier II" forms call for more detailed

information on individual chemicals and must be submitted upon request. Section 11022(d)(2). "Tier II" forms may be submitted in lieu of "Tier I" forms. Section 370.25(b), Title 40, C.F.R. Both types of forms and the instructions for their completion can be found in Sections 370.40 and 370.41, Title 40, C.F.R. The instructions pertaining to "Tier I" forms permit owners and operators to submit a site plan as an alternative to general locational information. Owners and operators who submit or are requested to submit a "Tier II" form have an option to attach a site plan to the inventory form indicating where certain chemicals are stored.

States are not required to use the federal forms. Rather, states may create and use their own inventory reporting forms. The adopted state form must contain information identical to that in the federal form. Sections 370.40(a) and 370.41(a), Title 40, C.F.R.

In accordance with the EPCRA, the General Assembly enacted R.C. Chapter 3750. R.C. 3750.02(A) created the State Emergency Response Commission ("commission"), appellant herein. R.C. 3750.08 requires owners or operators of regulated facilities to submit an inventory of the types, names, amounts and locations of certain hazardous chemicals and substances that are used or maintained at the facilities. Moreover, R.C. 3750.02 authorizes the commission to adopt rules.

Pursuant to this authority, the commission promulgated Ohio Adm.Code 3750-30-20, entitled "Emergency and hazardous chemical form." The rule is comprehensive and prescribes what information must be included in, and with, an Ohio "Tier I" or "Tier II" inventory reporting form. Specifically, subdivisions (F)(4) and (H)(7) address reporting requirements with respect to the location of certain hazardous chemicals and substances and require owners and operators of regulated facilities to submit a detailed scaled map indicating where the chemicals and substances are located. The map is to be submitted as an addendum to the state or federal form and it must be filed with the commission, the appropriate local emergency planning committee, and local fire department.

On July 13, 1990, the Ohio Chamber of Commerce and B.F. Goodrich Company, appellees, appealed to the Ohio Environmental Board of Review ("EBR") pursuant to R.C. 3750.19, seeking a determination that the mapping requirements imposed by Ohio Adm.Code 3750-30-20(F)(4) and (H)(7) were unlawful. In an order dated January 17, 1991, the EBR determined that the commission acted within its statutory authority and dismissed the appellees' appeal.

Appellees, pursuant to R.C. 3745.06, appealed the decision of the EBR to the Court of Appeals for Franklin County. The court of appeals reversed the decision of the EBR, finding that the requirements imposed by Ohio Adm.Code 3750-30-20(F)(4) and (H)(7) were "substantially more stringent" than those of the federal program and, therefore, unlawful.

The cause is now before this court pursuant to the allowance of a motion to certify the record.1

Jones, Day, Reavis & Pogue, John W. Edwards, Steven T. Catlett and Donald B. Allegro, for appellees.
Lee I. Fisher, Attorney General, and Mary Kay Smith, for

appellant.

Lee I. Fisher, Attorney General, and Tamara Squire Little, urging reversal for amicus curiae, Ohio Emergency Management Agency.

James E. Reuter, urging reversal for amicus curiae, Ohio Fire Chiefs' Association, Inc.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy and Marc J. Jaffy, urging reversal for amicus curiae, Ohio Association of Professional Fire Fighters.

Douglas, J.    The question presented to this court is whether the commission exceeded its authority in adopting Ohio Adm.Code 3750-30-20(F)(4) and (H)(7).  For the reasons which follow, we answer this question in the negative.

The controversy in this case involves R.C. 3750.02(B)(1), which provides that:

"(B)  The commission shall:

"(1)  Adopt rules in accordance with Chapter 119. of the Revised Code that are consistent with and equivalent in scope, content, and coverage to the 'Emergency Planning and Community Right-To-Know Act of 1986,' 100 Stat. 1729, 42 U.S.C.A. 11001, and applicable regulations adopted under it[.]"  (Emphasis added.)

Appellees contend that the language "consistent with and equivalent in scope, content, and coverage" establishes a limit on the commission's authority and prevents the commission from promulgating rules that are more stringent than what the EPCRA requires.  Therefore, urge appellees, because the reporting requirements imposed by Ohio Adm.Code 3750-30-20(F)(4) and (H)(7) exceed that which is necessary to achieve federal compliance, the requirements are unlawful.

The commission argues that R.C. 3750.02(B)(1) sets forth merely minimum reporting requirements that must be followed when promulgating rules.  In other words, the commission suggests that the language "consistent with and equivalent in scope, content, and coverage" establishes only a foundation and it (the commission) is free to adopt rules more stringent than federal law.  We agree.

R.C. 3750.02(B)(1) is somewhat ambiguous.  There is no question that the mapping requirements imposed by Ohio Adm.Code 3750-30-20(F)(4) and (H)(7) are consistent with the federal Act.  The ambiguity, however, lies with the term "equivalent." This term is not defined in R.C. Chapter 3750.  Thus, in determining legislative intent, we may consider the circumstances under which the statute was enacted, the objectives of the statute and the consequences of any particular construction.  R.C. 1.49.

As noted, supra, the impetus behind the enactment of R.C. Chapter 3750 was the EPCRA.  The purpose of the federal Act is to provide the public with information concerning hazardous chemicals in their communities and to encourage and support emergency planning efforts at state and local levels.  52 F.R. 38344 (1987); Section 370.1, Title 40, C.F.R.  By explicit terms, the EPCRA does not preempt state or local law.  Section 11041(a), Title 40, U.S. Code.  In fact, the Act anticipates that state and local authorities will expand upon federal requirements.  Section 11041(b) of the EPCRA provides that:

"(b)  Effect on MSDS requirements.

"Any State or local law enacted after August 1, 1985, which requires the submission of a material safety data sheet [MSDS] from facility owners or operators shall require that the data sheet be identical in content and format to the data sheet required under subsection (a) of section 11021 of this title. In addition, a State or locality may require the submission of information which is supplemental to the information required on the data sheet (including information on the location and quantity of hazardous chemicals present at the facility), through additional sheets attached to the data sheet or such other means as the State or locality considers appropriate." (Emphasis added.)

A common theme that permeates the federal Act and regulations adopted under the Act is that chemical disasters are ultimately state and local problems, and state and local authorities should have significant flexibility and latitude in planning for potential problems.  The United States Environmental Protection Agency ("EPA"), in discussing the integration of the federal Act with state and local programs, explained that:

"* * * EPA encourages States to modify their community right-to-know requirements to accommodate Title III without eliminating additional requirements that are beneficial to State or local needs.  * * *  To the extent possible in this final rule, the Agency has attempted to provide flexibility for State and local implementation and integration with their existing programs.

"* * *

"In the final [inventory reporting] rule, EPA has tried to provide as much flexibility as possible to the local and State officials who must implement this program, while at the same time provide a degree of standardization to the regulated community and ensure that statutory requirements are met.  EPA has thus revised the regulations to specify the circumstances under which a State or local form can be used in lieu of the Tier I and Tier II forms published today.  Revised {{370.40 and 370.41 of the final rule state that facilities will meet the Section 312 requirements if they submit the published form, or any State or local form that contains identical content. 'Identical content' means that, at a minimum, the same information requested in the form published in today's final rule must be requested in some portion of the State form. States may, in addition, use the form as published today but add supplemental questions, either interspersed throughout the form or attached at the end."  (Emphasis added.)  52 F.R. 38357 (1987).

Further, in addressing the design and content of inventory forms, and, in particular, the utilization of a site plan (map) identifying where certain hazardous chemicals are located, the EPA stated, in part, that:

"EPA believes that additional requirements for location information, such as site plans or quadrants or grid systems, may be useful on a site-by-site basis, but are not necessary for each facility.  If a State or local government desires such additional information, it may require it to be submitted under State or local law as a supplement to the federal form. * * *"

(Emphasis added.)  Id. at 38356.

R.C. Chapter 3750 parallels much of the EPCRA.  However, in enacting R.C. Chapter 3750, the General Assembly was very much aware of the flexibility and autonomy that the federal program granted the states.  Specifically, R.C. 3750.02(B)(1)(e) provides that the commission may establish its own hazardous chemical inventory forms and prescribe the information that must be included in these forms.  This subsection further provides that under certain circumstances the commission shall require owners and operators "to submit any additional information required by the commission's inventory form on an attachment to the federal form." (Emphasis added.)

Literally construed, R.C. 3750.02(B)(1)(e) allows the commission to adopt rules that require information that is in addition to that required under federal law.  Indeed, this information may take the form of a map identifying where certain hazardous chemicals are located.

Additional grants of rule-making authority are set forth in R.C. 3750.02(B)(2) and 3750.03(E)(5).  R.C. 3750.03(E)(5) authorizes local emergency planning committees to adopt rules "for the reporting or providing of information regarding locations where those [extremely hazardous] substances or [hazardous] chemicals are stored at those facilities * * * that are more stringent than the reporting and hazard communication requirements under this chapter and rules adopted under it by the commission."  (Emphasis added.)  Prior to enforcing a more stringent requirement, the local emergency planning committee must obtain a variance from the commission under R.C. 3750.11(B).  Further, R.C. 3750.02(B)(2) authorizes the commission to promulgate rules "that may be more stringent than" the EPCRA.  (Emphasis added.)  Subdivision (B)(2) contains numerous subsections and deals, to a large extent, with information and procedures at the local level.

The court of appeals, in holding that Ohio Adm.Code 3750-30-20(F)(4) and (H)(7) were unlawful, compared the authority granted to the commission pursuant to R.C. 3750.02(B)(1) with the authority granted pursuant to R.C. 3750.02(B)(2) and 3750.03(E)(5).  The court considered these different grants of authority significant and concluded "that rules 'equivalent in scope, content, and coverage' must be no more stringent than the federal act."  We disagree.  If we were to adopt the court of appeals' conclusion, it would remove the flexibility and latitude afforded the commission under the federal scheme and run afoul of the General Assembly's intent.

The fact that R.C. 3750.02(B)(1) does not contain the specific language "more stringent than" is not fatal.  R.C. 3750.02(B)(1) must be read in context with the federal scheme and in pari materia with the remainder of R.C. Chapter 3750. Accordingly, we find that the language "equivalent in scope, content, and coverage," as used in R.C. 3750.02(B)(1), prescribes only minimum regulatory requirements and does not prevent the commission from promulgating rules that impose reporting requirements on owners and operators of regulated facilities that exceed the reporting requirements of the EPCRA.

It is apparent that the appellees' main interest in challenging the commission's adoption of Ohio Adm.Code

3750-30-20(F)(4) and (H)(7) is to avoid the expense associated with preparing a map. However, we must keep in mind the purpose and objectives that the requirements seek to obtain. The usefulness and advantages of a map are indisputable. A map places information which fire fighters and other emergency response personnel need in a format which can be quickly and easily understood. Without question, a map identifying where certain hazardous chemicals or substances are located can reduce the risks encountered by emergency personnel and may even save lives.

Accordingly, we find that the commission did not exceed its authority in promulgating Ohio Adm.Code 3750-30-20(F)(4) and (H)(7). The judgment of the court of appeals is reversed.

Judgment reversed.

Sweeney, Acting C.J., Holmes, H. Brown and Resnick, JJ., concur.

Nader and Wright, JJ., dissent.

Robert A. Nader, J., of the Eleventh Appellate District, sitting for Moyer, C.J.

FOOTNOTE:

1 On February 21, 1992, the commission filed a motion and requested that we strike portions of the appellees' brief and record. By order dated March 25, 1992, we granted the commission's motion. 63 Ohio St. 3d 1429, 588 N.E. 2d 129. The order also seems to indicate that we struck appellees' entire brief. For the sake of clarity, we intended to strike only those portions of the appellees' brief and record that referred to matters not properly before the EBR and court of appeals.

Nader, J., dissenting. The majority opinion properly focuses its attention upon the phrase "equivalent in scope, content, and coverage" in R.C. 3750.02(B)(1), but then looks to the federal statute to define the phrase. Instead of reading the phrase in a manner consistent with the entire Revised Code section, the majority places undue emphasis on the flexibility provided to state and local governments by the federal statute to adopt rules which exceed federal requirements. While the Ohio legislature had the authority to surpass the federal mandates, it chose to do so only in limited portions of R.C. Chapter 3750. The legislature was keenly aware of this flexibility when it placed the limitation, "equivalent in scope, content, and coverage," upon the State Emergency Response Commission's ("SERC's") rulemaking power.

The majority argues that "equivalent in scope, content, and coverage," when read in pari materia with the remainder of R.C. Chapter 3750, constitutes only a minimum below which SERC may not go in prescribing reporting requirements. The majority makes this contention by declaring that the phrase "more stringent than" in R.C. 3750.02(B)(2) relates only to information and procedures required by the local authorities. R.C. 3750.02(B)(2) clearly indicates the legislature's capability to set forth standards which exceed those of the federal statute, when the legislature deems it appropriate. The majority's attempt to preserve the flexibility of the state and local governments, granted under the federal statute, actually thwarts an attempt by the legislature to do so.

The legislature seized upon this federally granted

flexibility and limited SERC's authority.  The legislature has resolved, by enacting R.C. Chapter 3750, that the local emergency planning committee is the proper entity to decide the information necessary to provide appropriate protection against potential catastrophic accidents involving hazardous substances and chemicals.  SERC, through the adoption of Ohio Adm.Code 3750-30-20, has attempted to usurp the legislature's authority, by issuing an Orwellian proclamation that only SERC knows how to properly protect local fire fighters and the communities they serve.  A review of the statutory structure, however, reveals a well-conceived system designed to ensure public safety.

Under R.C. 3750.02, the legislature provides for the basic duties of SERC.  These duties include, among others:  under (B)(1), gathering information, and under (B)(2), developing the content of the emergency response and preparedness plans.  Under R.C. 3750.03, SERC is to designate emergency planning districts and to appoint members of the local planning commissions.

R.C. 3750.03 continues, in divisions (D) and (E), to delegate responsibilities to the local planning committees.  The committees are responsible for the development and implementation of emergency response and preparedness plans, and are vested with various powers necessary to carry out those responsibilities.  R.C. 3750.04 then requires the local committees to submit their emergency response and preparedness plans to SERC for review.

For gathering information under R.C. 3750.02(B)(1), the legislature limited SERC to adopting rules "that are consistent with the equivalent in scope, content, and coverage to the 'Emergency Planning and Community Right-To-Know Act of 1986,' 100 Stat. 1729, 42 U.S.C.A. 11001, and applicable regulations adopted under it."  Specifically, R.C. 3750.02(B)(1)(e) gives SERC a limited ability to prescribe the information to be contained in the hazardous chemical inventory forms per R.C. 3750.08.

Under this limited authority to gather information, SERC has adopted a mapping requirement that goes well beyond the "scope, content, and coverage" of Section 370.40, Title 40, C.F.R., the federal regulations adopted under Section 11001, Title 42, U.S. Code.  While the federal regulations do require some information as to the general location of the hazardous material, compliance with these regulations does not require the preparation of a facility map.

The general location under the federal requirements for Tier I information consists of no more than listing the building or field in which the material is located.  Section 370.40(b), Title 40, C.F.R.  Tier II information requires a description of the type of storage and the storage condition of the hazardous material.  Section 370.41(b), Title 40, C.F.R.  Tier II information also requires the facility to "[p]rovide a brief description of the precise location of the chemical, so that emergency responders can locate the area easily."  Id.  Both Tier I and II information regulations allow the facility the option of providing a site plan.

A "brief description" or the option of providing a site plan does not license SERC to adopt the mapping requirements of

Ohio Adm.Code 3750-30-20. Thus, SERC has gone beyond the legislative delegation of authority in adopting a requirement that facilities must submit a facility map with the inventory form of R.C. 3750.08. Therefore, SERC may not order each facility to prepare a site map to submit with the yearly inventory form.

In certain situations, the existence of a map may be vitally important to the protection of lives and property. The significance of the role these maps may play, especially at the more complex facilities, does not validate the mapping requirement of Ohio Adm.Code 3750-30-20; instead, SERC may demand that the maps be included in the emergency response and preparedness plans prepared and submitted by local emergency planning committees, under R.C. 3750.02(B)(2). Additionally, the local planning committees, under the authority of R.C. 3750.03(E)(5), may adopt rules requiring information regarding the location of the hazardous materials at a facility. Both R.C. 3750.02(B)(2) and 3750.03(E)(5) allow "more stringent" requirements than those of the federal Act. Although the end result may be the same (maps are created), the structure in which they come into existence is dramatically changed.

That structure was created through the legislative process in which the causal effects of the implementation were thoroughly examined by the representative body. This court should not decide that SERC's legitimate end, the creation of a useful facility map, justifies the administrative agency's illegitimate means, the usurpation of legislative authority.

Without any extensive debate, it is apparent that, by placing the responsibility for the preparation of the facility map with the local planning committee, the structure imposed by the legislature fosters hands-on participation by those local emergency response personnel who will be relying on the information. This structure ensures the quality of the product. The map will be created by those who most depend upon the information: the local response authorities.

This structure also necessarily spawns familiarity with the facility and hopefully creates an atmosphere of cooperation which, in itself, can open lines of communication between local fire fighters and the facilities. The locally developed facility map may be identical to that which SERC now imposes, but it will have been created in the manner the legislature intended.

To determine the issue based solely on the desirability of the mapping requirement, while ignoring the legislative delegation of authority and the statutory structure, allows an appointed agency to dictate legislative policy. It is essential to the preservation of our constitutional form of government that the judiciary constrain rules in the Administrative Code to closely track legislative direction. The power conferred upon the legislature to enact laws must not be usurped by those directed to implement them.

The majority opinion permits administrative rules to exceed the legislative grant of authority; therefore, I respectfully dissent and would affirm the decision of the court of appeals.

Wright, J., concurs in the foregoing dissenting opinion.